**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**ROBERT L. GRANT   # 46149**                                                              **PETITIONER**

**VERSUS**                                              **CIVIL ACTION NO. 1:10-cv-320-LG-RHW**

**CHRISTOPHER EPPS**                                                                    **RESPONDENT**

## PROPOSED FINDINGS OF FACT AND RECOMMENDATION

Before the Court is Robert L. Grant's July 19, 2010 petition for writ of habeas corpus

pursuant to 28 U.S.C. § 2254.  Having considered the pleadings, records on file, briefs and

arguments of the parties, and the relevant legal authority, the undersigned U.S. Magistrate Judge

is of the opinion that Petitioner's request for federal habeas relief should be denied.

## FACTUAL AND PROCEDURAL BACKGROUND

On the night of July 16, 2004, Robert Lee Grant and Arthur Joshua had Joshua's

girlfriend Shannon Landry drive them to a rural location near the trailer home of Wesley Jerome

Williams, which Williams shared as a residence with his wheel-chair bound brother-in-law

Roderick Shanks and Terry Adams.  From her prior relationship with Adams, Landry knew that

Adams had a safe with money and drugs in his bedroom in the trailer, and Grant and Joshua

went to the home to rob Adams.  Shannon dropped Grant and Joshua off in a wooded area near

the trailer, with the understanding that she was to return in an hour to pick them up.  Grant and

Joshua walked up to the trailer and entered through the front door.  Williams was asleep on the

couch in the living room when he heard the door open and was immediately hit in the head with

a two-by-four and told to get down on the floor.  The intruders were masked, but Williams

recognized Joshua's voice.  When Joshua and Grant came into the trailer, Adams and Shanks

were in their respective bedrooms.  Grant went to Adams' bedroom, pointed a gun at Adams

and, without speaking, pointed to the safe, the contents of which Adams emptied into a pillow case as Grant held him at gunpoint. Grant had Adams on the floor and was in the process of tying Adams' hands behind him, when Adams' girlfriend and a male friend returned to the trailer from a trip to a nearby store. A gun was fired at least three times during the incident, and law enforcement officers recovered three nine millimeter shell casings from the hallway, and two projectiles, one from a box inside a back bedroom and one found lying on a sofa in the living room. Expert testimony established that the three shell casings were all fired by the same gun. At some point during the robbery Joshua was shot, and he and Grant left through the back door and headed for the wooded area behind the trailer. Physical evidence indicated Joshua's body was dragged into the woods, where it was subsequently found by the police. The pillow case was found outside near a corner of the trailer with the safe contents still inside it. When Landry later picked up Grant and took him to his girlfriend's house, Grant told her Joshua had been shot. Trial testimony established that none of the occupants of the trailer or the other two witnesses who arrived during the robbery had a gun, and while they all testified about the shots being fired, none of them knew that anyone had been shot. The only blood found inside the trailer was on the projectile found lying on the sofa in the living room. DNA analysis of the blood on the projectile could not exclude Arthur Joshua as the source of the blood. Joshua died from his gunshot wound.

In an indictment returned September 4, 2004, Robert L. Grant and Shannon Landry were charged with capital murder as a result of Joshua's death, *i.e.*, murder during the commission of robbery. [10-1, p. 6] By motion filed November 25, 2005, the prosecution sought to amend the indictment to allege that Grant was an habitual offender based upon his prior state court felony convictions of burglary in 1987, possession of a controlled substance in 1991, two counts of sale

of a controlled substance in 1994, and a federal conviction of arson in 1995. [10-1, pp. 112-113]

The trial court granted the motion on December 1, 2005. [10-1, p. 114]

Shannon Landry pled guilty to a reduced charge of accessory before the fact to robbery,

and testified for the State at Grant's trial, which began August 28, 2006 and ended September 1,

2006 when the Pearl River County Circuit Court jury found him guilty of murder. Following a

September 8, 2006 sentencing hearing, the trial judge found Grant to be an habitual offender and

sentenced him to serve life without parole in custody of the Mississippi Department of

Corrections in accordance with Mississippi law.[1]  [10-2, pp. 124-125]

Grant appealed the conviction, assigning six errors:  (1) Mississippi's felony murder

statute is inapplicable in the case of death of a co-conspirator; (2) the jury was not properly

instructed on capital murder; (3) the trial court erred in not allowing Grant's expert to state two

of his conclusions; (4) the trial court erred in allowing hearsay testimony of Chris Thomas;

(5) the trial court erred in sentencing Grant as an habitual offender; and (6) the jury verdict was

against the overwhelming weight of the evidence. The Mississippi Court of Appeals affirmed

the conviction and sentence on August 19, 2008. *Grant v. State*, 8 So.3d 213 (Miss. App. 2008),

*reh'g denied* January 27, 2009, *cert. denied*, May 7, 2009. On April 9, 2010, Grant applied for

leave to file a post-conviction motion, to assert as grounds for relief:

> (1) prosecutorial  misconduct – Grant claimed the prosecution used perjured
> testimony because Terry Adams testified he did not own or possess a gun at the
> time of the homicide, but had an indication of gunshot residue on the palm of one
> of his hands, and because there were differences between Adams' testimony and
> that of the other witnesses. Grant speculates that when Adams left the trailer after
> the incident to take his girlfriend home and hide his marijuana stash, he *could
> have* disposed of other evidence which would have accounted for the gunshot
> residue on his hand and/or changed clothes to rid himself of additional gunshot

---

[1]The sentence for murder in Mississippi is life imprisonment; permissible sentences for capital murder are
death, life imprisonment without parole, or life imprisonment with eligibility for parole. MISS. CODE ANN. § 97-3-
21. Conviction as an habitual offender precludes parole. MISS. CODE ANN. §§ 99-19-81 and 99-19-83.

residue, and that perhaps it was the girlfriend's father in the woods who caused the dogs to bark, which led officers to explore the area and find Arthur Joshua's body. [10-10, pp. 13-21];

(2) newly discovered evidence – Grant challenged the Court's acceptance of expert testimony from then state medical examiner Stephen Haynes, based upon a specially concurring opinion by then Supreme Court Justice Oliver Diaz, joined by Justice Graves, expressing concerns about Dr. Haynes qualifications to provide expert testimony. [10-10, pp. 21-23];

(3) ineffective assistance of counsel – Grant alleged his trial counsel was deficient because he stipulated to Dr. Haynes' qualification as an expert in forensic pathology and failed to investigate or voir dire on Haynes' qualifications; and because he conceded Grant's guilt by arguing on appeal that the Mississippi capital murder statute does not apply when it is a co-conspirator who is killed, and that Joshua's death was no more than an accidental death of a co-conspirator. [10-10, pp. 23-28];

(4) exclusion of two of his expert's conclusions;

(5) error in granting Jury Instruction S-13; and

(6) that his conviction was based "upon legally insufficient evidence." [10-10, p. 5]

The last three grounds are a reiteration of Grant's second, third and sixth grounds which were rejected on direct appeal.

The Mississippi Supreme Court denied the post-conviction application on May 26, 2010, finding the application "fails to make a substantial showing of the denial of a state or federal right as required by MISS. CODE ANN. § 99-39-27(5)..."  Two months later, Grant filed the instant habeas petition, in which he re-urges grounds and arguments from his unsuccessful post-conviction application and/or appeal, and asserts for the first time a claim of prosecutorial misconduct based on closing argument.

## LAW AND ANALYSIS

With the exception of the claim based on closing argument, all the grounds asserted in the petition before this Court have been presented to, and rejected by the state's highest court.

The Mississippi Supreme Court reviewed habeas Grounds Three and Four on direct appeal, and Grounds One and Two in Grant's post-conviction application.

A federal habeas court does not sit as a super appeals court, nor does it conduct *de novo* review of state court decisions. This Court's review in such cases is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

Subsection (d)(1) applies to mixed questions of law and fact, and Subsection (d)(2) permits federal court relief only if the state court adjudication of the claim resulted in a decision based on an unreasonable determination of the facts in light of the evidence. *See*, respectively, *Gachot v. Stalder*, 298 F.3d 414, 417 (5th Cir. 2002), and *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997).

Grant claims in Ground One that the prosecution knowingly allowed false testimony to be given by Terry Adams, because Adams testified he did not have a gun at the time of the robbery and did not shoot Arthur Joshua, but forensic testing after the incident revealed particles indicative of gunshot residue on one of his hands. Plaintiff contends the physical evidence establishes that Adams' testimony was false. To prevail on a claim of violation of due process based on the use of false or perjured testimony, Grant was required to show (1) that the evidence was false, (2) that the false evidence was material, and (3) the prosecution knew the evidence

was false.  *Nobles v. Johnson*, 127 F.3d 409, 415 (5th Cir. 1997), citing *Giglio v. United States*, 405 U.S. 150, 153-154 (1972); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996).  False evidence is "specific misleading evidence important to the prosecution's case in chief."  *Id.*, citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974).  False evidence is material only "if there is any reasonable likelihood that [it] could have affected the jury's verdict."  *Id.*, citing *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996), *cert. denied*, 519 U.S. 1094 (1997).

Grant has failed to produce any evidence showing Adams' testimony was false, much less that the prosecutor knew, or should have known, the testimony was false.  Grant's speculation that Adams *might* have had a gun, and *might* have fired it, and *might* have disposed of it when he left to take his girlfriend home and hide his marijuana does not satisfy his burden.  There is no record testimony which contradicts Adams' testimony that he neither had nor fired a gun that night; the only evidence remotely supportive of Grant's claim is the test which showed particles on his left palm indicative of gun shot residue.  However, the expert who testified about the test stated the sample was not positively identified as gunshot residue, hence the use of the term "indicative," and further testified there are ways such particles can be deposited that do not involve personally firing a gun, *i.e.*, being in close proximity to a gun when it is fired, and/or transfer from another person or thing.  Grant's failure to show the State *knowingly* offered false testimony defeats his due process claim based on such allegations.

In Ground Two Grant contends he was denied a fair trial due to ineffective assistance of counsel.  Specifically, Grant claims his counsel was constitutionally deficient in failing to "investigate the profession of Stephen Hayne and voir dire accordingly," and in arguing on appeal that Mississippi's capital murder statute does not apply to a homicide committed during the commission of a felony if the deceased was a co-conspirator also engaged in committing the

felony. Both these claims were urged in Grant's application for post-conviction relief, and found to be without merit by the state court.

The standard for determining ineffective assistance claims is set out in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires that one claiming ineffective assistance show that (1) his counsel's performance fell below an objective standard of reasonableness, that it was deficient to the extent that counsel failed to function as the counsel guaranteed by the Sixth Amendment, *and* (2) the defendant was so prejudiced by his counsel's deficient performance that he was deprived of a fair trial. *Strickland*, 466 U.S. at 687-88. Failure to establish both prongs of the test warrants rejection of the claim. *Moawad v. Anderson*, 143 F.3d 942, 946 (5th Cir. 1998); *Bates v. Blackburn*, 805 F.2d 569, 578 (5th Cir. 1986). A court's scrutiny of counsel's performance is highly deferential, and the petitioner must overcome a strong presumption that counsel acted reasonably under the circumstances and with a sound trial strategy. *Strickland*, 466 U.S. at 689. *See also*, *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994); *Messer v. Kemp*, 760 F.2d 1080, 1090 (11th Cir. 1985)(presumption is that counsel's actions were "within the wide range of reasonable professional assistance..."). All circumstances are considered in determining whether counsel's performance was reasonable under prevailing professional standards. *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).

To prove prejudice, the second prong of the test, petitioner must demonstrate that the result of the proceedings would have been different but for counsel's deficient performance, that counsel's performance rendered the trial result fundamentally unfair or unreliable. *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995) *cert. denied*, 516 U.S. 1005 (1995); *Bates*, 805 F.2d at 578. "Furthermore, it is not sufficient that a habeas petitioner merely alleges a deficiency on the part of counsel. He must affirmatively plead the resulting prejudice in his habeas petition."

*Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988), citing *Hill v. Lockhart*, 474 U.S. 52, 59-61, (1985); *see also*, *Bonvillain v. Blackburn*, 780 F.2d 1248, 1253 (5ᵗʰ Cir. 1986), *cert. denied*, 476 U.S. 1143 (1986). The Constitution does not guarantee error-free representation. *See Washington v. Watkins*, 655 F.2d 1346, 1367 (5th Cir. 1981), *cert. denied*, 456 U.S. 949 (1982).

Relying on a separate concurring opinion by former Mississippi Supreme Court Justice Diaz in *Edmonds v. State*, 955 So.2d 787, 792 (Miss. 2007), Grant contends Dr. Hayne was not qualified to offer an expert opinion in this case, and that his counsel was constitutionally ineffective in failing to investigate Hayne's profession and in stipulating to Hayne's qualifications in the field of forensic pathology. In *Edmonds*, the state court held Dr. Hayne testified outside his field of expertise as a forensic pathologist,[2] not that he was unqualified as a forensic pathologist or a licensed practicing physician, stating:

> While Dr. Hayne *is qualified to proffer expert opinions in forensic pathology*, a court should not give such an expert carte blanche to proffer any opinion he chooses. (emphasis added)

*Id.*, 955 So. 2d at 792. Dr. Hayne's testimony in Grant's case was not speculative and was not beyond his field of expertise in forensic pathology, a field in which Mississippi courts have continued to accept him as an expert. *Lima v. State*, 7 So.3d 903 (Miss. 2009); *Nelson v. State*, 10 So.3d 898, 904 (Miss. 2009).

In Grant's case, Dr. Hayne testified he is a physician licensed to practice medicine in Mississippi and Alabama, and he practices in the field of forensic pathology, among others. He works as the chief state pathologist for the Mississippi Department of Public Safety - Medical Examiner's Office and also for some parishes in Louisiana. Hayne performed the autopsy on Arthur Joshua, and found that Joshua died from a gunshot wound to the chest which penetrated

---

[2]Dr. Hayne's testimony regarding a two-shooter theory in *Edmonds* was held speculative and beyond his expertise, in light of the lack of evidence of any scientific testing to support the theory.

both lungs, grazed the trachea and fractured the fourth right rib before exiting the body, causing a lot of internal bleeding. Dr. Hayne testified Joshua could have moved a distance before being incapacitated by the bleeding in his chest cavity and difficulty breathing. At some point, Joshua would have expelled blood from his nose and mouth due to the internal bleeding, and it might appear he had been shot in the face. Dr. Hayne described the various injuries caused by the bullet's traveling through Joshua's body, as well as superficial injuries such as scratches and abrasions consistent with Joshua's being dragged. As to the distance from which the gun was fired, Dr. Hayne stated only that this was not a contact wound. He offered no opinion as to the respective positions of the shooter or Joshua at the time of the gunshot. [10-6, pp. 8-25] Because Grant has offered no legitimate basis upon which his attorney could have objected to Dr. Hayne's testimony and qualifications, and has failed to show how he was prejudiced by his attorney's actions regarding Hayne's testimony, Grant has met neither prong of *Strickland* on this point.

The other instance of alleged ineffective assistance relates to the argument on appeal by Grant's attorney that the Mississippi capital murder statute does not apply in this case because the deceased was a co-conspirator in commission of the felony during which he was mortally injured. According to Grant, "it is the concession of guilt by the counsel which deems the argument improper and prejudicial, being that it may confuse the jury by implicating Grant as the slayer of Joshua when Grant's defense is that he did not kill the deceased." [2, p. 13] Grant does not state that his attorney made this argument before the jury at trial,[3] and he offers no explanation of how an argument *on appeal* could confuse the jury. The authority Grant cites for this part of Ground Two involved actual concession by counsel *during trial* of the client's guilt:

---

[3]The Court's review of the record revealed no such argument before the jury.

in *Wiley v. State*, 517 So.2d 1373, 1382 (Miss. 1987), the attorney said in opening statement to

the jury that he thought the State would present evidence to convince the jury beyond a

reasonable doubt that his client shot the deceased; and in *State v. Harbison*, 337 S.E.2d 504

(N.C. 1985), the attorney in a murder prosecution admitted his client's guilt in closing argument

to the jury and urged a manslaughter conviction. Grant has cited no case involving a concession

of guilt in an appellate argument. In any event, the record belies Grant's contention that his

counsel conceded his guilt. The argument of which Grant complains is found at page 11 of

Appellant's brief,[4] and states:

> Turning to the facts of the instant case, five people were in the trailer during the
> robbery, but only Terry Adams claimed to see Robert Grant. R. 145-155. Terry
> Adams is a convicted felon who admitted to moving two pounds of marijuana
> before calling law enforcement. T. 176. Terry Adams was also the only person
> who tested positive for gunshot residue, which was on his left hand. T. 395. No
> one testified as to who shot Arthur Joshua. Jerome Williams testified that he
> knew for a fact that no one was shot in the home. T. 126. These facts indicate
> that no one saw Robert Grant shoot Arthur Joshua. Even though the jury did
> believe that Robert Grant was involved in the robbery, this at most was nothing
> more than an accidental death of a co-conspirator. As previously stated, Robert
> Grant respectfully contends that the legislature did not intend that the felony
> murder statute protect conspirators and co-conspirators.

[10-9, p. 17]. While counsel conceded that the jury believed Grant was involved in the robbery

in which Joshua was killed, counsel himself did not concede that Grant was guilty. The

undersigned finds Grant has failed to meet both prongs of the *Strickland* test with respect to his

attorney's appellate argument. The undersigned finds no merit to Ground Two, as the state court

decision on Grant's ineffective assistance claims was neither contrary to nor an unreasonable

application of *Strickland*.

In Ground Three Grant argues, as he did on direct appeal and in his post-conviction

application, that he was denied due process and a fair trial by the trial court's exclusion of two of

---

[4]Neither party requested oral argument in the direct appeal. [10-9, pp. 2, 56]

his expert's conclusions. The trial court excluded two conclusions which Plaintiff's expert Brent Turvey reached after his 2006 review of the physical evidence collected, statements taken and reports by law enforcement officers, and his personal visit to the Mr. Williams' trailer: that Pearl River County law enforcement's investigation was deficient, and it resulted in "potentially exculpatory physical evidence" not being "documented, collected, preserved or tested." [10-2, p. 133] After a *Daubert* hearing, the trial judge found these two conclusions would not assist the jury. Turvey was allowed to testify as to his remaining conclusions. The Mississippi Court of Appeals discussed this issue at length and found no abuse of discretion in the exclusion of the opinions.

A state Court's evidentiary rulings do not generally present constitutional issues for proper review in a federal habeas petition. *See, Crane v. Kentucky*, 476 U.S. 683, 689 (1986). Such rulings "present cognizable habeas claims only if they run afoul of a specific constitutional right or render the petitioner's trial fundamentally unfair." *Johnson v. Puckett*, 176 F.3d 809, 820 (5th Cir. 1999), citing *Cupit v Whitley*, 28 F.3d 532, 536 (5th Cir. 1994). "Federal habeas corpus review is limited to errors of constitutional dimension, and federal courts do not sit to review the mere admissibility of evidence under state law. *Castillo v. Johnson*, 141 F.3d 218, 222 (5th Cir. 1998). Grant has presented nothing, and the record in this case contains nothing to show the trial court's exclusion of the two conclusions by Grant's expert rendered Grant's trial fundamentally unfair.

In Ground Four, Grant reiterates his claim that the trial court erred in granting Jury Instruction S-13 "because the instruction did not instruct the jury on the elements of robbery" and because it "is misleading to the jury as it implicates Joshua as, not a co-conspirator along with Grant, but the victim of the robbery as well as the victim of a slaying." [2, p. 19] Since there was no objection to the instruction at trial, the appellate court reviewed this issue on plain

error grounds, and rejected Grant's argument, holding that "if all instructions, taken as a whole fairly, but not necessarily perfectly, announce the applicable rules of law, no error results." *Grant*, 8 So. 3d at 217.

State court jury instructions do not generally form a basis for federal habeas relief. *Gilmore v. Taylor*, 508 U.S. 333, 342 (1993); *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief.") "In examining habeas claims of improper jury instructions, the 'inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude.'" *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002), citing *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986). An instruction may not be judged in isolation, but "must be considered in the context of the instructions as a whole and the trial record." *Hughes v. Johnson*, 191 F.3d 607, 627-628 (5th Cir. 1999), citing *Estelle*, 502 U.S. at 72). "[T]here is a strong presumption that errors in jury instructions are subject to harmless-error analysis. Thus, even if the instruction was erroneous, if the error is harmless, habeas relief is not warranted." *Galvan*, 293 F.3d at 764-765, citing *Brecht v. Abrahamson*, 507 U.S. 619, 623-624 (1993). In the habeas context, "a constitutional error is not harmless if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id*. The petitioner bears burden of demonstrating that the error in the challenged instruction "by itself so infected the entire trial that the resulting conviction violates due process." *Mayabb v. Johnson*, 168 F.3d 863, 867 (5th Cir. 1999), citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). Grant's complaints about Jury Instruction S-13 do not demonstrate such error.

First, the trial court expressly instructed the jury that they were not to single out any individual instruction, but to consider the instructions as a whole. [10-2, p. 87] Second, the trial

court instructed the jury as to the elements of robbery in Instruction S-4 [10-2, p. 85], and also instructed the jury that if it found Grant did not participate in the robbery it must find him not guilty of capital murder. [10-2, p. 99] Finally, the evidence at trial clearly established that Joshua was one of the robbers, not a victim of the robbery, and nothing has been presented to show any confusion of the jury as to that point. The undersigned finds no merit to Ground Four.

Grant asserts in Ground Five that a statement by the prosecutor in closing argument resulted in a denial of due process. This ground was not presented to the state court on either direct appeal or application for post-conviction relief and is now procedurally barred from review by the state court. A federal habeas court is barred from reviewing claims on which state remedies are rendered unavailable by the petitioner's own procedural default. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1991). Even if that were not the case, federal habeas relief would not be warranted on this ground. The record does not include the argument of which Grant complains, *i.e.*, that the prosecutor misstated the testimony of witness Chris Thomas in arguing that Thomas testified that the night Joshua died, Grant told him that he (Grant) and Joshua had robbed Adams and that Joshua was shot. In fact, Thomas testified before the jury only that Grant said Arthur got shot. [10-5, p. 95] However, the Court notes that the trial court instructed the jury that remarks of counsel are not evidence. [10-2, p. 82] Furthermore, no objection to the statement was made at trial until after the jury retired to consider its verdict.

The undersigned finds Grant is not entitled to federal habeas relief as he has failed to show the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law.

## RECOMMENDATION

Based on the Petition, Respondent's answer, the record, and the relevant legal authority, the undersigned recommends that Petitioner's Application for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be denied, and the petition, dismissed.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen days to serve and file written objections to the Report and Recommendation. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge. Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 30th day of May, 2012.

/s/ *Robert H. Walker*

ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE